UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO:

MIGUEL MEJIA,

    Plaintiff,

v.

TACOCRAFT OF
FORT LAUDERDALE LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, MIGUEL MEJIA ("Mr. Mejia"), by and through undersigned counsel, sues Defendant, TACOCRAFT OF FORT LAUDERDALE LLC, and states as follows:

### NATURE OF ACTION

1. This is an action for declaratory judgment and damages arising out of Defendant's failure to take remedial action to eliminate a hostile work environment based upon national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 76.01-760.11.

### JURISDICTION AND VENUE

2. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this action involves a federal question regarding the deprivation of Mr. Mejia's civil rights.

3. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Mr. Mejia's state claim arising under FCRA as that claim is so related to his Title VII claim that it forms part of the same case or controversy.

4. Venue is proper in the Southern District of Florida, Fort Lauderdale Division, under 28 U.S.C. § 1391(b), because the claim arose in this judicial district.

## PARTIES

5. Mr. Mejia resides in Broward County, Florida.

6. Defendant is a Florida Limited Liability Company with its principal place of business in Fort Lauderdale, Florida.

## ADMINISTRATIVE EXHAUSTION

7. On November 29, 2022, Mr. Mejia filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), which was dual filed with the Florida Commission on Human Relations ("FCHR"), asserting that he was constructively discharged as a result of Defendant's failure to take remedial action to eliminate a hostile work environment based on national origin in violation of Title VII and FCRA.

8. On January 10, 2024, the EEOC issued Mr. Mejia a Notice of Right to Sue. Mr. Mejia brought this action within ninety days (90) of receipt of the Notice of Right to Sue.

9. Mr. Mejia also asserts a claim under FCRA, Pursuant to Fla. Stat. § 760.11(8), since more than 180 days have passed without there being a determination by FCHR on whether reasonable cause exists.

## STATEMENT OF FACTS

A. MR. MEJIA'S NATIONAL ORIGIN

10. Mr. Mejia is a lawful permanent resident of the United States ("U.S").

11. Mr. Mejia was born in the Dominic Republic.

12. The Dominican Republic is a Latin American country located in the Caribbean Sea.

13. Latino, and its variations, refers to a person, like Mr. Mejia, with origins in Latin America.

14. Mr. Mejia speaks both Spanish and English. As such, he is bilingual.

B. <u>MR. MEJIA'S ROLE AND JOB DUTIES</u>

15. Mr. Mejia has worked in the food service industry for over ten (10) years in various roles including preparatory cook ("prep cook"), line cook, and dishwasher.

16. Defendant is a Mexican restaurant and taqueria bar in the food service industry with several locations in Broward County, including Fort Lauderdale.

17. On May 1, 2022, Defendant hired Mr. Mejia as a prep cook in its Fort Lauderdale location.

18. As a prep cook, Mr. Mejia served in a supportive role to kitchen staff in the preparation of meals.

19. Mr. Mejia's duties included washing, chopping, sorting, and seasoning vegetables and meats, labeling and stocking ingredients, and adhering to relevant nutrition and sanitary regulations.

20. In addition, Mr. Mejia was responsible for cleaning dishes, washing cooking utensils, taking out trash, and sanitizing the kitchen.

21. As a prep cook, Mr. Mejia was scheduled to work five (5) days a week from 8AM to 5PM.

22. Mr. Mejia was supervised in the kitchen by Defendant's Executive Chef, Jason Cullen ("CULLEN").

23. As Executive Chef, CULLEN supervised kitchen staff members, like Mr. Mejia, and created their weekly work schedules.

24. During each shift, CULLEN would write a list of tasks on a board in the kitchen. The tasks were assigned to individual kitchen staff members. Each staff member was expected to complete the tasks assigned to them during the shift.

25. During each of his shifts, Mr. Mejia worked in the kitchen alongside other prep cooks.

26. One of the other prep cooks who routinely worked with Mr. Mejia was Camita Fleury ("FLEURY").

27. FLEURY was a senior member of the kitchen staff.

28. FLEURY is of Haitian national origin.

29. CULLEN referred to FLEURY as the "boss" of the prep cooks since she was the most senior member among them.

30. Based on CULLEN's representations, Mr. Mejia understood that he was to take direction, not only from CULLEN, but also from FLEURY.

C. CREATION OF THE HOSTILE WORK ENVIRONMENT

31. Between May 15, 2022 and May 31, 2022, FLEURY began to make comments critical of Mr. Mejias's work performance in the kitchen.

32. FLEURY often complained that Mr. Mejia failed to properly season meat and cut vegetables.

33. Additionally, FLEURY often complained that Mr. Mejia did not clean the kitchen floor properly.

4

34. Mr. Mejia was often confused by FLEURY's derogatory comments about his work performance because CULLEN considered Mr. Mejia to be a highly efficient new employee and, because of that, often requested that Mr. Mejia cover other shifts or come in early to assist in the kitchen.

35. In the beginning of June 2022, FLEURY's workplace harassment and ridicule of Mr. Mejia went beyond comments about his work performance.

36. During a day shift in the beginning of June 2022, FLEURY yelled at Mr. Mejia, in front of his coworkers, and stated that Mr. Mejia could not work anywhere else because "latinos did not know how to work."

37. Mr. Mejia was offended, confused, and humiliated by FLEURY's ridicule of his national origin.

38. Mr. Mejia, at first, was reluctant to bring the issue to CULLEN's attention because he knew that CULLEN favored FLEURY. As the newest member of the kitchen staff, Mr. Mejia feared that his job would be impacted if he filed a complaint against one of CULLEN's most favored staff members.

39. Mr. Mejia's initial silence only emboldened FLEURY's discriminatory ridicule of his nation origin.

40. Between June 2022 and August 2022, during almost every shift that they worked together, FLEURY ridiculed and humiliated Mr. Mejia in front of others by making offensive statements about his national origin.

41. For example, FLEURY often told Mr. Mejia that "latin people were lowlifes."

42. In addition, FLEURY told Mr. Mejia on numerous occasions that he was useless because "latin people did not know how to work."

5

43. FLEURY often made these offensive statements in front of Mr. Mejia and his co-workers, Heidy Claros ("Ms. Claros") and Issac Salmeron ("Mr. Salmeron").

44. Ms. Claros' country of national origin is Honduras.

45. Mr. Salermon's country of national origin is El Salvador.

46. Honduras and El Salvador are Latin American countries located in Central America.

47. FLEURY often intimidated Mr. Mejia, Ms. Claro, and Mr. Salmeron by yelling at them for speaking Spanish to each other in the kitchen and told them that they were only to speak English to each other during shifts.

48. FLEURY's continued harassment left Mr. Mejia feeling confused, humiliated, and demoralized because he could not understand the reason for her ridicule and offensive comments about his national origin as he had never directly or indirectly solicited them in any interaction with her.

49. Eventually, both Ms. Claro and Mr. Salmeron resigned due to FLEURY's frequent harassment regarding their speaking of Spanish in the kitchen and her offensive statements about latinos.

    D. <u>DEFENDANT'S KNOWLEDGE OF THE HOSTILE WORK ENVIRONMENT</u>

50. After Ms. Claro and Mr. Salmeron resigned, Mr. Mejia decided to bring FLEURY's frequent offensive and discriminatory conduct to CULLEN's attention.

51. During the first week of September 2022, Mr. Mejia stopped CULLEN, before his shift began, and spoke to him about FLEURY's frequent offensive and harassing behavior.

52. Mr. Mejia told CULLEN that FLEURY was constantly harassing him by making offensive comments in the workplace about latinos.

53. Mr. Mejia told CULLEN that he had never been subjected to such continued harassment based on his national origin at any workplace in the past.

54. Mr. Mejia told CULLEN that he could not tolerate the humiliation any further.

55. In response, CULLEN told Mr. Mejia that he "did not give a fuck about his feelings."

56. CULLEN further stated "What do you want me to do about it? Do you know how many people I have lost because of her. You are going to have to deal with it. There is nothing I can do about it."

57. CULLEN's statement left Mr. Mejia in shock and feeling demoralized.

### E. DEFENDANT'S FAILURE TO ELIMINATE THE HOSTILE WORK ENVIRONMENT AND MR. MEJIA'S CONSTRUCTIVE DISCHARGE

58. A week later, before the weekly work schedules were posted, Mr. Mejia spoke to CULLEN and requested not to work alongside FLEURY.

59. In response, CULLEN stated "let me see what I can do."

60. However, CULLEN never honored Mr. Mejia's request to change the work schedules.

61. Thereafter, between mid-September 2022 and mid-October 2022, Mr. Mejia approached CULLEN, on at least two (2) more occasions, before the weekly work schedules were posted, and requested not to work alongside FLEURY.

62. Again, CULLEN never honored Mr. Mejia's request to change the work schedules.

63. On October 19, 2022, Mr. Mejia sent CULLEN a text message requesting a schedule change in order to avoid having to work with FLEURY. CULLEN did not respond.

64.     The next day, on October 20, 2022, Mr. Mejia sent CULLEN a text message asking him if he had received the previous day's text message. CULLEN replied and told Mr. Mejia that he would adjust the schedule accordingly, but FLEURY was still "the boss."

65.     On October 25, 2022, Mr. Mejia sent CULLEN a text message advising him that the work schedule had not been properly adjusted as he and FLEURY were scheduled to work alongside each other again. In the text message, Mr. Mejia requested to begin his shift after FLEURY was done with hers and offered to work as many hours that day as CULLEN needed. More specifically, the text message stated:

> Please [l]et me know when she leaves so I can [c]ome to [w]ork and [s]tay as [m]any hours as you need as I have always done[.] You are my boss & I do respect you and [a]ppreciate you [v]ery much. I just [c]annot be [b]ullied by this [w]oman [a]nymore as [s]he has [d]one for [m]onths. As [y]ou texted me last week I understood that you [c]hanged my [s]chedule [a]ccordingly. I came to [w]ork this [m]orning & [w]as [c]onfronted with the [s]ame situation ([h]aving to [w]ork with this [l]ady [a]gain) This has [b]een [a]ffecting [m]e too much & this is [n]ot [f]air to me. I'm a [v]ery nice [g]uy and I love my job and [a]ll my [c]oworkers. And [a]s [y]ou [t]old me in the past [y]ou have [l]ost [m]any [e]mployees because of her! No one s[s]hould be [h]arrassed or [b]ullied in a [w]ork [p]lace as I have been. This is not a [d]emand or [a]n [o]rder [w]hen it [c]oncerns [a]n [e]mployee's [m]ental & [e]motional [w]ell [being]. I hope you [u]nderstand[.]

A true and accurate copy of Mr. Mejia's October 25, 2022 text message to CULLEN is attached as Exhibit 1.

66.     CULLEN responded to Mr. Mejia and stated "I needed you at 3. Then you quit." *Id.*

67.     On October 26, 2022, Mr. Mejia sent CULLEN an apologetic text message advising that he did not want to quit but was left with no other choice due to the working conditions. He requested to be provided with documentation of his separation. However, Defendant never provided Mr. Mejia any documentation of his separation.

8

## COUNT I - HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

68. Mr. Mejia realleges paragraphs 1 through 67 as if fully stated herein.

69. As alleged in paragraphs 10 through 14, Mr. Mejia belongs to a protected group.

70. As alleged in paragraphs 31 through 49, FLEURY subjected Mr. Mejia to discriminatory ridicule and offensive statements and acts, without solicitation, based upon his national origin, which were frequent and pervasive.

71. As alleged in paragraphs 22 through 24, CULLEN, as Defendant's agent, and Mr. Mejia's supervisor, was in a position to receive complaints of harassment.

72. As alleged in paragraphs 50 through 57, Mr. Mejia informed CULLEN about the workplace harassment, As such, Defendant knew, or in the exercise of reasonable care should have known, about the hostile work environment.

73. As alleged in paragraphs 55 through 67, CULLEN, as Defendant's agent, failed to take any action to prevent the continued harassment after he gained knowledge. As such, Defendant failed to take prompt remedial action to eliminate the hostile work environment.

74. As alleged in paragraphs 58 through 67, Defendant's failure to take remedial action to eliminate the hostile work environment made working conditions so difficult that Mr. Mejia was compelled to resign. As such, Mr. Mejia was constructively discharged.

75. As a direct and proximate result of Defendant's failure to take remedial action to eliminate the hostile work environment, Mr. Mejia suffered, and continues to suffer, lost wages and benefits.

76. As a direct and proximate result of Defendant's failure to take remedial action to eliminate the hostile work environment, Mr. Mejia suffered, and continues to suffer, emotional pain, inconvenience, loss of dignity, and mental anguish.

77. Moreover, as Defendant's agent, CULLEN's reluctance to do anything about the hostile work environment shows that Defendant acted with reckless indifference to Plaintiff's federally protected rights for which an award of punitive damages will be sought.

### COUNT II - HOSTILE WORK ENVIRONMENT IN VIOLATION OF FCRA

78. Mr. Mejia realleges paragraphs 1 through 67 as if fully stated herein.

79. As alleged in paragraphs 10 through 14, Mr. Mejia belongs to a protected group.

80. As alleged in paragraphs 31 through 49, FLEURY subjected Mr. Mejia to discriminatory ridicule and offensive statements and acts, without solicitation, based upon his national origin, which were frequent and pervasive.

81. As alleged in paragraphs 22 through 24, CULLEN, as Defendant's agent, and Mr. Mejia's supervisor, was in a position to receive complaints of harassment.

82. As alleged in paragraphs 50 through 57, Mr. Mejia informed CULLEN about the workplace harassment, As such, Defendant knew, or in the exercise of reasonable care should have known, about the hostile work environment.

83. As alleged in paragraphs 55 through 67, CULLEN, as Defendant's agent, failed to take any action to prevent the continued harassment after he gained knowledge. As such, Defendant failed to take prompt remedial action to eliminate the hostile work environment.

84. As alleged in paragraphs 58 through 67, Defendant's failure to take remedial action to eliminate the hostile work environment made working conditions so difficult that Mr. Mejia was compelled to resign. As such, Mr. Mejia was constructively discharged.

85. As a direct and proximate result of Defendant's failure to take remedial action to eliminate the hostile work environment, Mr. Mejia suffered, and continues to suffer, lost wages and benefits.

86. As a direct and proximate result of Defendant's failure to take remedial action to eliminate the hostile work environment, Mr. Mejia suffered, and continues to suffer, emotional pain, inconvenience, loss of dignity, and mental anguish.

87. Moreover, as Defendant's agent, CULLEN's reluctance to do anything about the hostile work environment shows that Defendant acted with reckless indifference to Plaintiff's rights under state law for which an award of punitive damages will be sought.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Mejia requests that the Court grant him the following relief:

(1) enter a declaratory judgment finding that Defendant's actions violate Title VII and FCRA;

(2) award back pay and loss benefits through the date of trial, and front pay and future loss of benefits if reinstatement is not feasible;

(3) award compensatory damages, in an amount to be determined at trial, which would compensate Mr. Mejia for damages, including, but limited to, emotional pain and suffering, inconvenience, loss of dignity, and mental anguish;

(4) award punitive damages, in an amount to be determined, at trial that would punish the Defendant for its reckless indifference to Mr. Mejia's protected rights under federal and state law, and that would effectively deter similar conduct in the future;

(5) award prejudgment interest on all amounts due;

(6) award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and Fla. Stat. § 760.11(5).

(7) order such other relief as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Mr. Mejia demands a trial by jury on all issues so triable.

Dated this 3rd day of April 2024.

                Respectfully submitted,

BY: */s/ Ely Gonzalez*
      ELY GONZALEZ, ESQ.
      Fla. Bar No.:  0055879
      **LAW OFFICE OF ELY GONZALEZ, P.A.**
      66 West Flagler Street, Suite 900
      Miami, Florida 33130
      Telephone: (305) 645-8971
      Primary email: elygonzalez@eglawpa.com
      Secondary email: info@eglawpa.com